FILED

SEP 17 2012

CLERK, US DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

XVP SPORTS, LLC,

        Plaintiff,

v.                              CIVIL ACTION NO. 2:11cv379

GARY BANGS,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on XVP Sports LLC's ("Plaintiff" or "XVP") objections to the United States Magistrate Judge's Report and Recommendation ("R&R") recommending that this Court grant summary judgment in favor of defendant Gary Bangs ("Defendant" or "Bangs"). After carefully considering the Magistrate Judge's thorough R&R and the objections thereto, this Court conducted a de novo review as to all proposed findings and recommendations that were objected to by Plaintiff. Having completed such review, this Court hereby adopts and approves the findings and recommendations set forth in the R&R, as supplemented by this Order. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment.

### I. FACTUAL AND PROCEDURAL HISTORY

On September 14, 2009, Tim Donaldson ("Donaldson"), the president of XVP, submitted XVP's application for a federal firearms license ("FFL") to the United States government's

Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). The only "Individual Owner" of XVP or "Other Responsible Person[]" for XVP that was listed on XVP's initial FFL application was Donaldson. Admin Record ("A.R.") at 36, ECF No. 13-1 at 36.[1]

After receiving XVP's initial application, the ATF scheduled an application inspection due to concerns arising from its discovery that Shooting Sports Distributors, Inc. ("SSDI"), a former firearms licensee operating out of the same location as XVP, had its FFL revoked for willful violations of the federal Gun Control Act ("GCA"). During the inspection, the ATF learned that Norman Gladden ("Gladden"), the sole owner of SSDI, was also the sole owner of XVP. As a result, Donaldson was informed that Gladden would need to be listed as a "Responsible Person" on XVP's application. However, due to SSDI's prior willful violations of the GCA, the ATF also advised Donaldson that listing Gladden would likely lead to a denial of XVP's

_____

[1] The FFL application clearly requires that the applicant identify, and disclose requested information about, each "Individual Owner, Partner, and Other Responsible Persons in the Business." ATF Form 7 (5310.12) rev. May 2005, A.R. at 53 (emphasis added). The instructions to the application define responsible persons to include "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, polices, and practices of the corporation . . . insofar as they pertain to firearms." A.R. at 56. Furthermore, Donaldson was provided with an ATF memo defining responsible persons and such document expressly indicates that individuals at "related corporations may be responsible persons" and that all applicants must make a good faith effort to identify responsible persons. A.R. at 61-64.

application for a FFL.  XVP did not revise its application to identify Gladden as a responsible person.  Instead, Gladden transferred ownership of XVP to his wife.  XVP then resubmitted its application, which again did not list Gladden, but did list Gladden's wife as an owner/other responsible person.  Even after such transfer of ownership: (1) Gladden remained the sole owner of SSDI, which provided the sole compensation to Donaldson—who acted as both XVP's and SSDI's president; (2) Gladden/Gladden's personal FFL retained ownership of 500 to 1,000 firearms that would be sold by XVP under a consignment agreement;[2] (3) XVP would not hire any employees; rather, SSDI employees would provide work for XVP but would only be paid by SSDI; and (4) Gladden owned the building where XVP would operate and although XVP would be required by contract to pay Gladden monthly rent, as long as SSDI paid Gladden its monthly rent, XVP would not be required to make any rent payments.  Accordingly, Donaldson was fully aware that "Shooting Sports Distributors . . . 100 percent owned by Mr. Norman Gladden would actually employ the personnel to run [XVP's] firearms business under [XVP's] license."  A.R. at 209.  Furthermore, Donaldson testified that Gladden could

---

[2] Originally, the retail gun shop that operated at the same business address as SSDI was operated under SSDI's FFL.  Because SSDI's FFL was revoked, Gladden transferred a second FFL to such location (Gladden's personal FFL), permitting firearm sales to continue at such location.  At the time XVP was applying for an FFL to replace Gladden's personal FFL at such location, Gladden's personal FFL was in the process of being revoked.

fire Donaldson from SSDI (the only entity that paid Donaldson a salary) or exert control over Donaldson by threating to fire him. A.R. at 190-91, 202. Additionally, XVP's application for an FFL indicates that it was doing business as "AP Arms, and Donaldson testified that the fictitious name of "A&P Arms" was currently being used to sell firearms from the location where XVP would take over, and that such business name was owned by SSDI. A.R. at 29, 173.

On March 8, 2010, XVP was denied a FFL on the grounds that: (1) it had willfully violated the GCA, or any rules or regulations thereunder; and (2) it had willfully failed to disclose material information in the FFL application. A.R. at 14-15. Following an administrative hearing, XVP received a Final Notice of Denial similarly indicating: (1) that XVP was ineligible to receive a FFL under 18 U.S.C. § 923(d)(1)(D) because XVP "willfully failed to disclose material information required in connection with its application, namely that Norman Gladden is a responsible person for XVP . . ."; and (2) that XVP was ineligible to receive a FFL under 18 U.S.C. § 923(d)(1)(C) because "XVP is controlled by Norman Gladden, and Norman Gladden willfully violated the provisions of the Gun Control Act." A.R. at 4.

XVP then filed a Petition for Judicial Review of the ATF's denial pursuant to 18 U.S.C. § 923(f)(3). Pursuant to 28 U.S.C.

4

§ 636(b)(1)(B), the undersigned judge referred the case to United States Magistrate Judge Douglas E. Miller for a R&R on the pending motion for summary judgment. Judge Miller issued his R&R recommending that this Court grant summary judgment in favor of Defendant, and XVP filed timely objections to the R&R. Having received such objections, and Defendant's reply, this matter is now ripe for review.

## II. STANDARD FOR REVIEWING THE R&R

"The Federal Magistrates Act requires a district court to 'make a de novo determination <u>of those portions</u> of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made.'" <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)) (alteration in original). As to portions of the R&R that are not objected to, this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" <u>Id.</u> (quoting Fed. R. Civ. P. 72 Advisory Committee's Note).

## III. OBJECTION TO PROPOSED FINDINGS OF FACT

The recommended findings of undisputed facts are laid out in detail in the Magistrate Judge's R&R. XVP directly challenges only one recommended factual finding set forth therein. XVP disputes the purported factual finding that Gladden himself, rather than SSDI, committed willful violations

5

of the GCA.  However, a careful reading of the R&R reveals that the recommended factual finding is not that Gladden personally committed willful violations of the GCA.  Rather, the finding is that Defendant Bangs previously concluded that Gladden committed violations of the GCA.  As the Magistrate Judge was merely reiterating one of Defendant's justifications for denying XVP a FFL, and it is undisputed that Defendant previously offered such justification, this Court overrules XVP's objection and adopts the Magistrate Judge's recommended factual findings without exception.[3]

In addition to the lone objection to the Magistrate Judge's proposed facts, XVP restates nine "material facts" that it contends weigh in its favor.  This Court, however, finds that the mere listing of "material facts" in XVP's recently filed brief is insufficient to constitute a "specific objection" to the Magistrate Judge's recommended factual findings.  See Fed. R. Civ. P. 72(b) (indicating that a party must advance "specific written objections to the proposed findings and recommendations" and that the district judge must only make de novo

---

[3] The Court notes that the Magistrate Judge's R&R did conclude that there is a sufficient legal basis for attributing SSDI's GCA violations to Gladden personally.  R&R 17 n.6, ECF No. 21.  However, such legal conclusion does not rely upon the purportedly erroneous factual finding that Gladden himself violated the GCA, but instead is based on the Magistrate Judge's conclusion that even though it was SSDI that violated the GCA, such violations are properly attributable to Gladden.  This Court does not adopt or reject such legal analysis because independent justifications exist for granting summary judgment in favor of Defendant.

determinations as to "any part of the magistrate judge's disposition that has been properly objected to") (emphasis added); Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 316 (4th Cir. 2005) (indicating that "[i]n the absence of [a] 'specific written objection,' [a] district court [i]s free to adopt the magistrate judge's recommendation . . . without conducting a de novo review"). Notably, the Magistrate Judge presented detailed objective factual findings, drawn in part from Gladden's and Donaldson's own testimony, and the accuracy of such findings is not directly challenged by XVP. R&R 2-4. Absent specific objections that seek to illuminate a purported error committed by the Magistrate Judge, this Court adopts the proposed factual findings set forth in the R&R. See Smith v. Washington Mut. Bank FA, 308 Fed. Appx. 707, 708 (4th Cir. 2009) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)) ("The [district] court need not conduct de novo review, however, 'when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations.'") (emphasis added).

Even if this Court viewed XVP's listing of "material facts" as a sufficient "specific objection" to the Magistrate Judge's proposed factual findings, the Court would adopt the facts as set forth in the R&R. Notably, several of the facts listed by XVP appear undisputed and do not conflict with the Magistrate

Judge's proposed factual findings. Some of the nine facts, even if disputed, are not "material" to the issues raised in the summary judgment motion. Portions of three of the nine facts (numbers 1, 3 & 6 in XVP's brief) do, however, appear directed at the material issue of whether Gladden had any direct or indirect control over XVP. ECF No. 22 at 2. Those facts are nevertheless insufficient to create a "material" factual dispute because the majority of such factual assertions merely demonstrate that neither Gladden nor his wife intended to be involved with XVP's business operations. Such subjective plans, however, considered in light of the undisputed objective facts demonstrating that Gladden retained <u>the ability</u> to influence XVP if he so chose, fail to create a "material dispute." Furthermore, to the extent the proffered facts go beyond Gladden's intent, such as the assertion that Gladden "relinquished complete . . . control over XVP," such claim is not really a "fact" but is instead a conclusory statement going to the ultimate issue in this case. Plaintiff cannot avoid summary judgment by first failing to challenge the undisputed objective facts establishing specific details about XVP's relationship with SSDI and Gladden and then merely advancing the conclusory assertion that Gladden had no control over XVP. Accordingly, to the extent that Plaintiff's listing of

"undisputed facts" is considered a sufficient objection to the R&R, it is rejected by this Court.[4]

### IV. OBJECTIONS TO PROPOSED ANALYSIS

XVP advances thirteen objections to the Magistrate Judge's analysis in the R&R. This Court individually considered each objection, and conducted a de novo review of all portions of the analysis in the R&R that were objected to. For ease of discussion, XVP's thirteen objections are distilled down to four primary arguments. XVP objects to: (1) the standard of review; (2) the finding that Gladden had indirect control over XVP, thus necessitating listing his name on the FFL application as a responsible person; (3) the willfulness and materiality of failing to list Gladden as a responsible person; and (4) the Magistrate Judge's attribution of SSDI's prior violations of the GCA to Gladden and the propriety of considering any prior GCA violations when evaluating XVP's FFL application.

### A. Objection to Standard of Review

#### 1. Summary Judgment

XVP objects to the standard of review applied by the Magistrate Judge, arguing that the correct standard requires

---

[4] As noted by the Magistrate Judge, although XVP had the right to submit additional evidence outside of the Administrative Record to prove the existence of a material factual dispute, XVP failed to do so. See American Arms Intern. v. Herbert, 563 F.3d 78, 86 n.12 (4th Cir. 2009) (indicating, in a FFL case, that "a district court can consider evidence submitted by the parties outside the administrative record in determining whether summary judgment is appropriate").

that all evidence considered in support of a summary judgment motion must come from disinterested witnesses under Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000). While Reeves specifically discusses unimpeached, disinterested witnesses, it does so to illustrate the uncontroversial rule that it is the role of the jury, not the court, to make credibility determinations and weigh evidence that is subject to multiple interpretations. Id. at 151; see Luh v. J.M. Huber Corp., 211 Fed. Appx. 143, 146 (4th Cir. 2006) (characterizing Reeves as stating "the noncontroversial position that witness testimony that the jury is not required to believe cannot be used to sustain a summary judgment decision"). Accordingly, when ruling on a summary judgment motion, a court "may not make credibility determinations or weigh the evidence" and must "disregard any evidence favorable to . . . the moving party that a jury would not be required to believe." Erwin v. United States, 591 F.3d 313, 327 (4th Cir. 2010) (emphasis added).

As stated in Reeves, a court should give credence to "'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" Id. (quoting Reeves, 530 U.S. at 151) (emphasis added).[5] However, when ruling on a summary

_____

[5] Although Reeves indicates that a district court should give credence to unchallenged evidence from disinterested witnesses, in so

10

judgment motion, a court may also give credence to other facts supporting the movant, regardless of their source, if such facts are not challenged by the non-moving party because a failure to challenge proffered facts may render such facts "admitted." See Fed. R. Civ. P. 56(c) (indicating that the "party asserting that a fact . . . is genuinely disputed must support the assertion by" challenging the movant's evidence or highlighting conflicting evidence); see also E.D. Va. Loc. Civ. R. 56(B) (indicating that "the Court may assume that facts identified by the moving party in its listing of [undisputed] material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

Here, XVP fails to demonstrate that the Magistrate Judge applied the wrong standard of review as Reeves does not require district courts to disregard all evidence favoring the movant that does not originate from a disinterested witness. If such standard applied, even unchallenged authentic documents could not support a grant of summary judgment. Furthermore, as indicated above, a significant portion of the proposed undisputed facts set forth in the R&R are drawn from Gladden's

---

requiring, Reeves does not prohibit a court from considering other unchallenged evidence favoring the moving party. In other words, although Reeves appears to identify a subset of testimonial evidence favoring a movant that should generally be accepted, it does not define the universe of unchallenged evidence that may be accepted in appropriate circumstances, including authentic admissible documents that speak for themselves.

and Donaldson's own testimony, and were therefore appropriately relied on by the Magistrate Judge.  Although the Magistrate Judge recognized that some factual disputes remain in this case, the Judge properly concluded that such factual disputes are <u>not material</u> to the resolution of the pending summary judgment motion.  See <u>American Arms Intern. v. Herbert</u>, 563 F.3d 78, 86 (4th Cir. 2009) (indicating that summary judgment is appropriate if the uncontested facts support a single violation of the GCA because a single violation is sufficient to support the ATF's decision).  XVP therefore fails to demonstrate that the Magistrate Judge applied the wrong standard of review, or that he improperly relied on evidence that a jury would not be required to believe.[6]  Accordingly, the Magistrate Judge stated and applied the appropriate standard of review in a motion for summary judgment.

## B. Objections to Gladden's Classification as a Responsible Person

The ATF denied XVP's application for a FFL based on its failure to list Gladden on such application as a responsible

---

[6] The Fourth Circuit has recognized that evidence found in an administrative record, "enjoys a presumption of verity" and that "[i]n an appeal of agency action, '[t]hat record, unless somehow contradicted, satisfie[s] the [agency's] initial burden of demonstrating the absence of any genuine issue of [material] fact.'" <u>Herbert</u>, 563 F.3d at 86 n.12 (quoting <u>Langston v. Johnson</u>, 478 F.2d 915, 918 n.17 (D.C. Cir. 1973)) (alterations in original).  As previously noted, XVP <u>did not submit any additional evidence in opposition to summary judgment,</u> but instead relied on its own citations to the administrative record.

person.  Under 18 U.S.C. § 923(d)(1)(D), a willful failure "to disclose any material information required" or the making of "any false statement as to any material fact" is grounds for denying a FFL application.  The undisputed facts demonstrate that XVP was the applicant in this case, and that XVP did not list Gladden as an owner or other responsible person on either its initial or revised applications for a FFL.  The core question, then, is whether Gladden exercised direct or indirect control over XVP, and therefore had to be listed on the revised FFL application as a responsible person.[7]

The undisputed facts establish that Gladden created XVP and was its sole owner when XVP filed its initial FFL application. Gladden only transferred ownership of XVP to his spouse after XVP was specifically informed by the ATF of the need to disclose Gladden's ownership interest on XVP's application.  Following the transfer of XVP's ownership, Gladden continued to own the building where XVP operated and continued to be the sole owner of SSDI, which utilized the same building as XVP.  Perhaps most important, SSDI (of which Gladden is the sole owner) furnished and compensated all employees that would perform work for XVP. Such employees are the ones on the front line who are

---

[7] It appears to this Court that it is not even debatable that Gladden was required to be listed on XVP's initial FFL application. At the time the first application was filed, Gladden was XVP's sole owner, and the first category of persons that must be listed on the portion of the FFL application form at issue is "individual owners."  A.R. at 53.

responsible for directly interacting with prospective firearm purchasers. Furthermore, Gladden owned XVP's entire beginning inventory of hundreds of firearms and he, at least initially, retained control over which guns XVP would sell. From this initial XVP firearms inventory, Gladden would receive 88% of all gross proceeds. Also, the application fee for XVP's FFL was paid by a check issued from one of Gladden's business accounts. Additionally, Donaldson, who was both SSDI's and XVP's president, testified that SSDI, not XVP, would be paying Donaldson's salary, meaning that Gladden's transfer of ownership of XVP to his wife had little, if any, practical impact on Gladden's ability to influence XVP's president.

The Magistrate Judge therefore correctly determined that the undisputed facts demonstrate a sufficient unity of interest between Gladden, SSDI, and XVP, such that Gladden exercised at least indirect control over XVP at the time the revised application was submitted. On the initial application, Gladden, the founder and sole owner of XVP, was not listed as an owner. The ATF notified Donaldson of XVP's failure to comply with the instructions on the FFL application, and informed him of the need to list Gladden. Gladden's subsequent transfer of interest in XVP to his wife, regardless of whether it was done with the intent to avoid listing Gladden on the FFL, was insufficient to relinquish his control over XVP based on his continued ownership

14

of SSDI, combined with the other elements of control noted above. Therefore, it is apparent from the undisputed facts that Gladden is a responsible person that, at a minimum, had indirect control over XVP. XVP's failure to list Gladden on its FFL application therefore constituted a violation of the GCA, and the Plaintiff's objections contending the contrary are overruled.

### C. Objections to Willfulness and Materiality of Failure to Disclose Gladden on the FFL Application

#### 1. Willfulness

XVP argues that the facts do not establish that its failure to list Gladden as a responsible person constituted a "willful" violation of the GCA. However, as our Court of Appeals has explained, "malice or improper motive is not necessary to establish willfulness." Herbert, 563 F.3d at 85. Rather, a "deliberate disregard of, or plain indifference toward known legal obligations is enough to constitute 'willfulness.'" Id. (internal quotation marks and citations omitted). Further describing such standard, the Fourth Circuit stated in Herbert that "[w]hether we term this 'plain indifference,' 'deliberate disregard,' 'reckless disregard,' or a 'conscious, intentional, deliberate, and voluntary action' is of little consequence." Id. at 87. Accordingly, an FFL application can be denied if the applicant "displayed a lack of concern for the regulations" that

amounts to a reckless disregard of their requirements. Id.
Relevant to such inquiry is whether ATF officials met with the
applicant to "review the regulations and make sure that [the
applicant] understood what was required in order to be in
compliance." Id. Furthermore, as the Magistrate Judge
correctly recognized, willfulness may be inferred where the ATF
makes an official warning that a certain action violates the GCA
and compliance does not change. Id. at 85.

Here, XVP's initial application did not list Gladden as an
owner or responsible person, even though he was the sole owner
of XVP, had direct control over XVP and its president, and the
application plainly requires that all owners and responsible
persons be listed on the FFL application. At the time the ATF
informed Donaldson that Gladden needed to be listed as a
responsible person, the ATF provided Donaldson with a multi-page
memo explaining the concept of a responsible person in greater
detail than that provided on the FFL application form's
instructions. Thereafter, Gladden transferred his ownership
interest in XVP to his wife, and Donaldson submitted a revised
application on behalf of XVP that again failed to list Gladden
as a responsible person. Although, in other circumstances, such
transfer of ownership may have resulted in Gladden no longer
qualifying as a responsible person, or may have at a minimum
provided Donaldson with a good faith belief that listing Gladden

16

was no longer necessary, here, such transfer had little, if any,
practical effect on Gladden's authority with respect to XVP and
its firearms.  Donaldson's own testimony reveals that Donaldson
knew the following relevant facts: (1) that Gladden wanted a
"fresh FFL" with only Donaldson listed as a responsible person,
A.R. at 195; (2) that although there were multiple reasons for
forming XVP and applying for a new FFL, "one of them was that
[Gladden] couldn't get a new license," on his own, A.R. at 196;
(3) that XVP's new FFL would allow XVP (whether owned on paper
by Gladden or his wife) to continue to sell Gladden's stock of
500 to 1,000 firearms, from the same location, using the same
business name (AP Arms), A.R. at 29, 173, 209; (4) that XVP
would have no employees, but that Donaldson and SSDI's employees
would perform work on behalf of XVP without compensation from
XVP, A.R. at 209;[8] (5) that Gladden was the 100% owner of SSDI
and retained control over Donaldson, including the ability to
fire him at any time,  A.R. at 190; and (6) that XVP would not
even have to pay rent for its firearms store as long as SSDI,

---

[8] Donaldson testified on direct that SSDI basically ran everything at
the location in question and that the gun store doing business at such
location, which would be taken over by XVP, was strictly limited to
the retail sales of firearms and was responsible for the "firearms and
the records of those firearms." A.R. at 173.  The fact that XVP would
have no employees, pay no salaries, not own any of the 500 to 1,000
firearms that were initially being offered for sale, and apparently
intended to continue to use a store name owned by SSDI, collectively
indicate that XVP was a separate entity in name only.

the primary tenant for the property at issue, continued to pay rent to Gladden, A.R. at 184-85.

Based on the above, the Magistrate Judge correctly concluded that XVP's failure to list Gladden as a responsible person on XVP's revised FFL application, <u>after</u> the ATF specifically discussed the obligation to list responsible persons with Donaldson, constituted a willful failure to disclose material information on the FFL application in violation of 18 U.S.C. § 923(d)(1)(D). Even after Gladden transferred his ownership interest in XVP, he retained <u>at least</u> indirect control over XVP and Donaldson, most notably because SSDI, which was wholly owned by Gladden, continued to pay Donaldson's salary, and the salaries of all the SSDI employees that would perform work on behalf of XVP. Gladden's continued influence was readily known to Donaldson, and Donaldson repeatedly indicated on cross-examination that Gladden's influence over Donaldson constituted "indirect control." A.R. at 190-92. Accordingly, Donaldson's failure to list Gladden on XVP's revised application demonstrated, at a minimum, a "reckless disregard" of his obligation to accurately complete the FFL application form. XVP's objection to the finding of willfulness is therefore rejected.

## 2. Materiality

XVP next argues that failure to disclose Gladden as a responsible person does not constitute a failure to disclose "material" information because listing Gladden could not have constituted grounds for denying XVP's FFL application. XVP contends that the only instance in which the ATF can decline a FFL application based on the background of a responsible person is under § 923(d)(1)(B). Section 923(d)(1)(B) prohibits the ATF from issuing a license to an "applicant" who is prohibited from transporting, shipping, or receiving firearms in interstate commerce. XVP claims that, because this statutory provision is the only provision that expressly defines an "applicant" to include responsible persons, it is the only provision under which the issuance of a FFL may be denied based upon the negative background/history of a responsible person. Accordingly, XVP contends that because Gladden is not prohibited from "transporting, shipping, or receiving firearms in interstate commerce," the failure to list Gladden as a responsible person is not "material" because listing Gladden would not have precluded XVP from obtaining a FFL.

XVP's materiality argument is unpersuasive as it relies on the premise that a FFL applicant is free to disregard the ATF's express instructions and reporting requirements on a FFL application, including the instruction to list the identity of

19

company owners or other responsible persons if, according to the applicant's interpretation of the controlling statutes and regulations, revealing such person's identity would not alone constitute grounds for denying the applicant a FFL. This is a false premise, because the identity of a person with the power to directly or indirectly influence the policies of the company seeking a FFL is clearly material information, regardless of whether that person's background or history would ultimately result in the denial of a FFL.

Congress passed the Gun Control Act to regulate access and distribution of firearms. Huddleston v. U.S., 415 U.S. 814, 824 (1974). The principal agent of federal enforcement of the Act is the licensed dealer. Id. Therefore, information related to those people who control and direct the dealers' activities and handling of firearms unquestionably constitutes material information. Mountaineer Gun Sales, LLC, 2012 WL 194079, at *7. The materiality of such information in this case is underscored by the fact that SSDI, wholly owned by Gladden, had its FFL revoked, and Gladden's personal license was in the process of being revoked. Accordingly, Gladden is precisely the type of responsible person that the ATF would be most interested in investigating in order to determine whether issuance of a FFL to a company newly formed by Gladden is appropriate based on his

past conduct.[9]   If the ATF were denied access to such information, the necessary investigation simply could not be conducted.   Accordingly, the Court overrules XVP's objections regarding materiality.   See Article II Gun Shop, Inc. v. Gonzales, 441 F.3d 492, 498 (7th Cir. 2006) (finding that explanations of materiality were irrelevant where the dealer failed to comply with the GCA).[10]

The Magistrate Judge's recommended conclusion, that XVP violated § 923(d)(1)(D) by willfully failing to disclose material information, is adopted by this Court.   Although this Court addresses below XVP's remaining objections, such finding

---

[9] If, as asserted by XVP, listing Gladden as a responsible person would not have been grounds for denial of the FFL, XVP should have listed him, as required by the FFL application, and thereafter challenged any denial that XVP contends would have been improper based on the relevant statutes and regulations.   XVP cannot make an end-run around the FFL application's clear disclosure requirements by speculating that had Gladden been listed, as required, and the FFL application been denied, XVP would have been successful in challenging such denial.

[10] XVP's objections appear to blur the line between information that the ATF has the right to request, and require truthful production of, with information that would automatically result in the denial of a FFL application.   Here, had Gladden been properly listed on the FFL application, it appears that he would have been required to disclose his involvement with SSDI and his personal FFL.   See A.R. at 54 (requiring all responsible persons to: (1) indicate if they previously held a FFL, were an officer in a corporation holding a FFL, or were ever an employee of a federal firearms licensee; and (2) provide "Full Details on a Separate Sheet" about such positions).   The ATF could then have inquired into such matters to explore Gladden's level of responsibility for any past GCA violations, and determine how they might impact XVP.   If the ATF lacked the ability to require the truthful production of such information, its screening process for a FFL would be illusory.

is alone sufficient to support the grant of summary judgment in favor of Defendant. Herbert, 563 F.3d at 86.

### D. Objections to Consideration of any Prior GCA Violations as Part of Evaluating XVP's Application

XVP argues that any willful violations of the GCA committed by SSDI cannot be attributed to Gladden and/or XVP without a showing that Gladden personally committed those violations. However, the weight of authority appears to establish that where a former business is substantially similar to the new entity applying for a federal firearms license, the willful violations of the GCA which were committed by the former corporation may be attributable to the sole owner. See Gilbert v. Bangs, 813 F. Supp. 2d 669, 677 (D. Md. 2011) (rejecting the FFL applicant's contention that GCA violations committed by his former company could not be attributed to him as grounds for denying his newly filed FFL application, noting, inter alia, that the new firearms business would have been closely unified with the former business, as the FFL application lists "the same address," and the new business would have "resumed selling the former inventory of the revoked licensee"); Barany v. Van Haelst, No. CV-09-253-RMP, 2010 WL 5071053, at *6 (E.D. Wash. Dec. 6, 2010) (finding the business operations of the applicant "substantially indistinguishable" from the prior business that lost its FFL); see also Casanova Guns, Inc. v. Connally, 454 F.2d 1320, 1322

22

(7th Cir. 1972). Here, the undisputed facts in the record show that Gladden was the sole owner of SSDI and that SSDI had its license revoked for willful violations of the GCA. It is likewise undisputed that Gladden's personal license was in the process of being revoked at the time XVP applied for its FFL. There is no dispute that Gladden owns the building to be leased by XVP, that the check in XVP's application for a FFL came from Gladden's business account, that SSDI (100% owned by Gladden) will provide employees to perform all of XVP's work, that XVP's entire beginning inventory of firearms will be sold on consignment for Gladden, and that, prior to being directly informed by the ATF of the need to place his name on the application, Gladden was the 100% owner of XVP.

It is therefore plain that Gladden created XVP as a way to continue selling the prior firearms inventory owned/controlled by Gladden, from the same location where SSDI operated, with SSDI employees, thus effectively continuing the same business even though SSDI lost its FFL and Gladden was in the process of losing his personal FFL. Accordingly, the willful violations which resulted in the revocation of SSDI's FFL <u>appear to be</u> properly attributable to Gladden, and thus properly considered when evaluating XVP's application.

Notwithstanding the above, XVP argues that any attribution of SSDI's or Gladden's prior conduct to XVP is impermissible

23

based on principles of statutory construction.   As briefly discussed above, although § 923(d)(1)(B) defines applicant broadly, to include responsible persons, § 923(d)(1)(C), the provision that XVP purportedly violated based on SSDI's/Gladden's past violations of the GCA, references the "applicant" without any reference to responsible persons.   XVP therefore contends that to establish a violation of § 923(d)(1)(C), the ATF must demonstrate that the applicant itself, here XVP, committed violations of the GCA.   Under such an interpretation, the ATF may not deny XVP a license under subsection (d)(1)(C) based on Gladden's past conduct even if he personally committed GCA violations.   XVP supports its position by invoking the rule of statutory construction that presumes that Congress's use of broad language in one subsection, but failure to repeat it in another, was intentional.[11]

This Court need not resolve this statutory construction issue highlighted by the parties in order to overrule XVP's objections on this issue, nor must it determine whether SSDI's GCA violations are attributable to Gladden.   Rather, the Court assumes, without deciding, that XVP must have itself committed a willful violation of the GCA or its regulations to violate §

---

[11] The Magistrate Judge noted that such construction of the statute would result in an untenable position for the ATF, which would no longer be able to enforce the Act, as new corporations would be able to avoid scrutiny of past violations by owners or managers.

923(d)(1)(C).  Having made such assumption, the Court finds that
the undisputed evidence demonstrates that XVP's decision not to
list Gladden as a responsible person, was itself a "willful
violation" of GCA regulations, and thus a violation of §
923(d)(1)(C), because:  (1) XVP was required by federal
regulation and the plain language of the application form itself
to list all responsible persons; and (2) the requirement that
all persons with direct or indirect influence over XVP must be
listed on the FFL application was expressly explained to XVP's
president by the ATF.  As noted in the Magistrate Judge's R&R,
the controlling federal regulations require all FFL applicants
to complete Form 7 "in accordance with the instructions on the
form."   27 C.F.R. § 478.44.   Form 7 clearly requires the
applicant to list all individual owners and responsible persons,
and the instructions on the form expressly define responsible
person to include any individual with indirect control over the
management, policies and practices of the company as they relate
to firearms.  A.R. at 53, 56.  XVP did not list Gladden when he
was the sole owner of XVP, nor did they list him when he
transferred such ownership but retained sole ownership in SSDI,
which provided the sole compensation to XVP's president and all
individuals that worked on behalf of XVP.

    XVP's failure to complete the revised application form in
accordance with the instructions is properly deemed a "willful"

violation of the applicable federal regulations because the ATF expressly informed XVP of the need to list all responsible persons, yet XVP failed to list Gladden even though he retained at least indirect control over XVP after transferring his ownership interest to his wife. See 18 U.S.C. § 923(c)(1)(C) (permitting denial of an application if the applicant "willfully violated any of the provisions of [the GCA] or regulations issued thereunder") (emphasis added); R&R 15-17 (concluding that regardless of the breadth of the definition of the term "applicant" as used in § 923(d)(1)(C), denial of such application under § 923(d)(1)(C) is appropriate because XVP itself failed to comply with controlling regulations by failing to list Gladden as a responsible person).[12] Accordingly, this Court adopts the Magistrate Judge's proposed finding that XVP itself willfully failed to comply with the applicable

---

[12] To the extent XVP objects to the Magistrate Judge's conclusion that § 923(d)(1)(C) incorporates the definition of "applicant" set forth in § 923(d)(1)(B), such objection is rejected because the Magistrate Judge did not reach such conclusion. Instead, the Magistrate Judge explained several reasons why it appeared that it would be appropriate to incorporate such definition into § 924(d)(1)(C). However, the Magistrate Judge thereafter expressly indicated that it was not necessary to reach a conclusion on such issue because the record demonstrated that XVP itself, as applicant, willfully violated the GCA. R&R at 15, 17. In the alternative, to the extent that the R&R could be viewed as squarely addressing such statutory construction issue, this Court does not adopt, and does not reject, such analysis as this Court adopts the Magistrate Judge's separate analysis and conclusion that XVP, as applicant, failed to comply with both § 924(d)(1)(C) and § 924(d)(1)(D). Notably, as previously discussed herein, a single violation of the GCA is sufficient to uphold the ATF's denial or revocation of a license. Herbert, 563 F.3d at 86; see A.R. at 4 (ATF's finding that XVP failed to comply with both § 924(d)(1)(C) and § 924(d)(1)(D)).

26

regulations, thereby warranting denial of XVP's FFL application pursuant to § 923(d)(1)(C).

### E. Alternative Basis for Granting Summary Judgment

As previously discussed herein, XVP contends that the Magistrate Judge applied the improper summary judgment standard. Although this Court has already overruled such objection, consideration of such matter prompted this Court to consider not only the summary judgment standard applicable in all cases, but also the standard of review specific to an FFL applicant's petition for review under 18 U.S.C. § 923(f)(3). Such research revealed that although the summary judgment standard remains unchanged, the "de novo" review that must be conducted by this Court is not necessarily equivalent to a "de novo trial," at least where the petitioner fails to advance any new evidence, demonstrate the need for an evidentiary hearing, or otherwise specifically call into question the factual findings made by the ATF following a hearing on the merits. As discussed below, this Court alternatively concludes that even if the Administrative Record reveals that credibility determinations were necessary in order to opine that XVP willfully violated GCA regulations, the administrative ruling was "authorized," was supported by

27

substantial evidence, and that no substantial doubt infects the ATF's findings of fact.[13]

Beginning first, with the language of the controlling statute, the GCA provision that permits review by this Court states that, after the ATF issues a final administrative ruling denying an FFL application:

> The aggrieved party may . . . file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial . . . . In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative] hearing . . . . If the court decides that the Attorney General was not authorized to deny the application . . ., the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

18 U.S.C. § 923(f)(3) (emphasis added). Although such statute expressly requires a "de novo judicial review," after stating such requirement the statute expressly indicates: (1) that a district court "may consider" additional evidence; and (2) that the question a district court must ultimately resolve is whether the Attorney General was "authorized" to deny the FFL application. Id.

---

[13] The Court provides this analysis as an alternative basis for its ruling and locates it at the end of the instant opinion because the meaning of "de novo" under § 923(f)(3) was not briefed by the parties to this case.

Federal Courts have, over time, struggled to define the precise nature of such "de novo judicial review" based on the statute's use of somewhat contradictory language.   See Stein's, Inc. v. Blumenthal, 649 F.2d 463, 465-66 (7th Cir. 1980) (discussing the split between federal courts applying a "de novo" standard in § 923(f)(3) cases from those that only consider whether the administrative decision was "supported by substantial evidence"); Prino v. Simon, 606 F.2d 449, 451 (4th Cir. 1979) (rejecting the "familiar 'substantial evidence'" standard in favor of "De novo review," but failing to delineate the contours of de novo review under § 923(f)(3)); see also 61 A.L.R. Fed. 511 (discussing various applications of the § 923(f)(3) "de novo" standard).   This Court finds the Seventh Circuit's analysis in Stein's Inc. to be well reasoned.   Such analysis favorably cites the Fourth Circuit's opinion in Prino, and, like in Prino, rejects a "substantial evidence" standard in favor of a "de novo" standard.   Stein's, Inc., 649 F.2d at 466. The Seventh Circuit's detailed and well-reasoned opinion explains:

> Although the legislative history of § 923(f)(3) speaks of "de novo review," we do not understand that history to require the district court to hold a hearing and receive evidence beyond that contained in the administrative record in every case.   The language of the statute itself is permissive: "the court may consider any evidence submitted by the parties." (Emphasis added.)   Instead we believe that Congress intended to afford the district court the discretion

to receive additional evidence to be considered along
with that in the administrative record when some good
reason to do so either appears in the administrative
record or is presented by the party petitioning for
judicial review.    In other words, there is a
difference between the "de novo review" required by 18
U.S.C. § 923(f)(3) and a "trial de novo."  Cf. United
States v. Raddatz, 447 U.S. 689 (1980) (the "de novo
determination" required by the Federal Magistrates Act
does not always require a de novo hearing).  We hold
that while the statute requires the former, it does
not in every case require the latter.  Considerations
of judicial economy suggest that trial anew of factual
matters already litigated should be avoided unless
substantial doubt infects the agency's findings of
fact.    See Guilday v. United States Department of
Justice, 385 F. Supp. 1096, 1098-99 (D. Del. 1974)
("In the absence of clear guidelines from Congress, it
is  appropriate  for  the  courts  to  consider  the
interests  of  judicial  economy  and  fairness  before
requiring an automatic trial de novo.  To the extent
that a trial de novo would require pretrial discovery
and   trial   proof   of   factual   background   already
developed in administrative proceedings, it would be
unjustifiably duplicative").

Id.

Because the "review" that must be performed by the district
court is "de novo," the administrative ruling does not carry any
presumption of accuracy.  Id.  Rather, "[t]he ultimate decision
as to the law and the facts remains with the trial judge."  Id.
(emphasis added).  However, because the district court is not
obligated to consider additional evidence and the ultimate
inquiry is only whether the decision below was "authorized," the
district court may accord the administrative findings "such
weight as it believes they deserve in light of the evidence in
the administrative record and the evidence, if any, the district

court receives to supplement that record." Id. at 466-67. "In this sense, the [ATF's] decision may be upheld when the [district] court concludes in its own judgment that the evidence supporting the [ATF's] decision is 'substantial.'" Id. at 467 (emphasis added); see Gilbert v. Bangs, 813 F. Supp. 2d 669, 673 (D. Md. 2011) (applying the standard articulated in Stein's Inc. requiring the district court to determine, in its own judgment, whether the evidence supporting the ATF's decision is "substantial"), aff'd, No. 11-2008, 2012 WL 2019155 (4th Cir. June 6, 2012).

Although the Fourth Circuit has not squarely addressed the breadth of "de novo" review under § 923(f)(3), the standard as articulated in Stein's Inc. appears to find support in the Fourth Circuit's recent statement in Herbert that "an administrative record is a duly authenticated record that enjoys a presumption of verity" and that such record, "'unless somehow contradicted, satisfie[s] the [agency's] initial burden of demonstrating the absence of any genuine issue of [material] fact.'" Herbert, 563 F.3d at 86 n.12 (quoting Langston v. Johnson, 478 F.2d 915, 917-18 (D.C. Cir. 1973)) (emphasis added) (alterations in original). Although not a § 923(f)(3) case, as explained in greater detail in Langston:

> [O]nly by contradicting the administrative record
> could appellant have sustained the factual premise
> urged here, and his contention that he should have

31

> been indulged a trial for that purpose misconceives a
> burden which had overtaken him. . . . [G]iven the
> presumptive verity of the administrative record, it
> was necessary for appellant, in order to gain an
> opportunity to impeach the record at a trial, to show
> that an issue as to its accuracy genuinely existed.
> But appellant made no effort to do so, and the failure
> was fatal.

Langston, 478 F.2d at 917-18.

Here, it is readily apparent that the ATF's denial decision was "authorized" in that the evidence presented at the hearing was substantial and sufficiently justified the denial of XVP's FFL application. Notably, XVP has not submitted any additional evidence, requested an evidentiary hearing, nor taken any other steps to supplement the administrative record. If XVP contends that the administrative denial was based on improper credibility determinations or other inaccurate findings of fact, XVP should have pursued an evidentiary hearing in this Court, or at a minimum submitted affidavits demonstrating a genuine issue of material fact. Instead, XVP has simply opposed summary judgment, apparently based on the belief that a trial anew is automatic if any conflicting testimony appears in the administrative record. However, as previously discussed herein, "[c]onsiderations of judicial economy suggest that trial anew of factual matters already litigated should be avoided unless substantial doubt infects the agency's findings of fact." Stein's, Inc., 649 F.2d at 466. XVP has unquestionably failed

to demonstrate that "substantial doubt" infects the ATF's findings of fact as the ATF's findings were soundly based on the testimony from the administrative hearing.   Furthermore, the majority of the findings below did not turn on credibility determinations since Donaldson admitted many key facts that support the denial of XVP's application, including the fact that the ATF expressly discussed with him the need to list all responsible persons on the FFL application, that XVP was being founded, in part, to obtain a "fresh" license without Gladden's name on it, and that Gladden retained at least indirect control, if not direct control, over XVP through SSDI.

Accordingly, although this Court is under no obligation to accord any weight to the ATF's administrative findings, the Court, having carefully reviewed the transcript of the hearing below, concludes that such findings are supported by the record. Having no "substantial doubt" that the agency's findings are appropriate, and that its conclusions based on such findings were sound, this Court concludes that the ATF's denial of XVP's application was both "authorized" and appropriately supported by the evidence.   Summary Judgment in favor of Defendant is therefore warranted in this case.

## V. CONCLUSION

The Court, having reviewed the record, considered the objections filed by XVP, and made de novo findings with respect

33

to the portions objected to, does hereby adopt and approve the findings and recommendations set forth in the Report of the United States Magistrate Judge, as supplemented by this Order. More specifically, the Court adopts the factual findings set forth in the R&R and adopts the recommendations and analysis therein with the exception of the finding that SSDI's violations are attributable to Gladden, an issue this Court deems it unnecessary to reach in order to conclude that XVP failed to comply with both § 924(d)(1)(C) and § 924(d)(1)(D). Furthermore, this Court alternatively concludes that summary judgment is appropriate in this case based on the "de novo judicial review" standard specific to review under § 923(f)(3) as the ATF's factual findings were based on substantial evidence that has not been effectively called into question by XVP.

For the above reasons, this Court **GRANTS** Defendant Gary Bangs' motion for summary judgment.

The Clerk is directed to send a copy of this Order to all counsel of record.

**It is so ORDERED.**

/s/ _____
_____
Mark S. Davis
United States District Judge

September 17, 2012
Norfolk, Virginia